The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except with the modification of Finding of Fact #11, Conclusion of Law #1 and Award #1, the addition of Stipulation #8 and minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The employee/employer relationship existed at the time of the alleged incident.
2. Michigan Mutual Insurance Company was the carrier on the risk at the time of the incident.
3. The date of injury was June 13, 1995.
4. The parties were subject to the North Carolina Workers Compensation Act at the time of the incident, the employer employing the requisite number of employees to be bound under the provisions of said Act.
5. The average weekly wage of plaintiff at the time of the injury was $367.64 yielding a weekly compensation rate of $245.11.
6. Liability has been admitted with the approval of a Form 21 by the Commission on November 7, 1995 and the following benefits have been paid to date: temporary total disability from July 17, 1995 through July 31, 1996 and from August 7, 1996 and continuing.
7. The parties at the hearing submitted a Pre-Trial Agreement dated July 12, 1999. The documents attached to the Pre-Trial Agreement were stipulated into evidence. In addition, after the hearing, the parties stipulated into evidence the following Industrial Commission forms: Form 19, Form 21, Form 22, Form 26, Forms 28, Form 28B, Form 28T, Form 28U, Form 33, Amended Form 33 and Form 33R.
8. After the hearing, the depositions of Dr. Vanden Bosch, Dr. Edwards, Dr. Gwinn and Dr. Bullard were submitted and received into the evidentiary record.
 ***********
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff, who was forty-nine years old at the time of the hearing before the Deputy Commissioner and who has a GED, began working for defendant-employers newspaper business in 1991. Initially plaintiff performed both telemarketing and customer service, but she subsequently worked solely as a customer service representative. Her duties included handling payments and collections, counting money, including coins received from newspaper racks, and making daily bank deposits.
2. In approximately May 1995, plaintiff began experiencing pain and numbness in her left hand. The symptoms became progressively worse and then developed in her right hand as well. On June 5, 1995 she went to Dr. Bullard, her internist, who ordered nerve tests. He subsequently diagnosed her condition as bilateral carpal tunnel syndrome and referred her for treatment to Dr. Vanden Bosch, an orthopedic surgeon. Dr. Vanden Bosch examined her on June 13, 1995 and concurred with the diagnosis. He initially recommended conservative treatment with medication and splints. However, plaintiff did not experience much improvement, so surgery was advised. On July 19, 1995, he performed a carpal tunnel release of plaintiffs left hand, and her symptoms subsequently improved. Consequently, on August 21, 1995 Dr. Vanden Bosch operated on her right hand.
3. Within a week of the second operation, plaintiff began to develop recurrent symptoms in her left hand. Plaintiffs right hand responded similarly with initial improvement followed by recurrent symptoms. Dr. Vanden Bosch therefore referred plaintiff to Dr. Edwards, a hand surgeon, for a second opinion. Dr. Edwards examined plaintiff on September 28, 1995. At that point, Dr. Edwards was optimistic that plaintiffs carpal tunnel syndrome would gradually improve, but he found evidence of cubital tunnel syndrome, an unrelated condition, and advised plaintiff to avoid acute elbow flexion.
4. Dr. Vanden Bosch continued to follow plaintiff for persistent symptoms of pain and paresthesia in her hands. In addition, he referred plaintiff to Dr. Kushner, a neurologist, for repeat electrodiagnostic testing. The tests revealed abnormalities consistent with carpal tunnel syndrome. Consequently, Dr. Vanden Bosch continued to treat plaintiff with anti-inflammatory medication and rest. However, even minimal activities continued to cause plaintiff significant pain. On February 26, 1996 plaintiff was examined by Dr. Hall in Chapel Hill. Although her examination was remarkably normal, he had plaintiff undergo further nerve testing and the results again were consistent with carpal tunnel syndrome. In May 1996 plaintiff returned to Dr. Edwards who found no sign of reflex sympathetic dystrophy. He injected plaintiffs right carpal tunnel. When plaintiff was next seen by Dr. Edwards on July 17, 1996, her right hand was improved but her left hand was still quite symptomatic. Therefore, Dr. Edwards ordered custom wrist splints for plaintiff and released her to return to light-duty work.
5. Defendant-employer then offered plaintiff a position as a receptionist and plaintiff returned to work for four days in August 1996. The job involved transferring telephone calls and tearing sheets of paper in order to send customers copies of their advertisements. Plaintiffs hand symptoms increased to the point that she was in tears and her employer sent her home. Dr. Edwards further restricted the work plaintiff could do thereafter. However, the newspaper did not have work available within those limitations.
6. On August 19, 1996, Dr. Vanden Bosch examined plaintiff and determined that she had reached maximum medical improvement. In his opinion, plaintiff had sustained permanent damage to the median nerve in both hands, thus her symptoms would not likely improve. In addition, Dr. Vanden Bosch gave plaintiff significant restrictions regarding the activities she could perform with her hands and he rated her with ten-percent permanent partial impairment to each hand. Defendants then sent plaintiff to Dr. Gwinn, a physiatrist, who was of the opinion that she should be able to perform light work. Since there was a discrepancy between plaintiffs reports of sensory loss and the monofilament testing performed at Dr. Edwards office, Dr. Edwards indicated that the findings suggested some functional overlay.
7. Defendants admitted liability for plaintiffs carpal tunnel syndrome pursuant to a Form 21 Agreement, which was approved by the Industrial Commission. Defendants paid compensation to plaintiff for temporary total disability for the time she was out of work up to her trial return to work in August 1996. Thereafter, defendants then resumed payment of compensation after she was unable to perform the receptionist job. Furthermore, defendants hired Page Rehabilitation Services to provide plaintiff with vocational placement assistance. Plaintiff then began an extensive and prolonged job search during which she contacted dozens of employers in the area where she lived. However, no job was offered to her. In November 1997 defendant-carrier advised the vocational counselor to close the file. Nevertheless, plaintiff continued to look for suitable employment without success. Defendants made no further efforts to assist plaintiff in finding a job.
8. Plaintiff saw Dr. Vanden Bosch occasionally after he released her in August 1996. By September 1998 he concluded that she was disabled from any gainful employment. She was continuing to have problems brushing her hair and teeth and performing other ordinary activities of daily living. He did not provide or recommend further treatment except for medication for pain management. Defendants sent plaintiff back to Dr. Gwinn on April 15, 1999. He recommended a pain clinic evaluation and that she be tried on Neurontin, a new medication. Apparently defendants would not authorize the pain clinic evaluation.
9. By Form 33 filed December 4, 1998, plaintiff requested a hearing on the basis that defendants would not concede that plaintiff was totally and permanently disabled. Once the calendar for the hearing was provided to the parties, the insurance company contacted Morgan Dickerman, the newspaper publisher, and advised him to find work for plaintiff. This was over a year and one-half after defendants had stopped providing any vocational placement assistance to her. Mr. Morgan then offered her a telemarketing position. However, the job involved repeatedly dialing telephone numbers, an activity which plaintiff could not perform for long.
10. As a result of plaintiffs compensable carpal tunnel syndrome, she has sustained permanent damage to the median nerve of both hands. This condition, combined with a probable hypersensitivity on plaintiffs part, has caused her to experience debilitating pain even with minimal activity. Plaintiff has extensive restrictions involving the use of her hands and, despite diligent effort on her part to find suitable work over a substantial period of time, no suitable job has been located which plaintiff could obtain. The position offered by the newspaper when faced with a hearing was not offered in good faith, but it was also not suitable considering the hand activity required.
11. In view of the unsuccessful job search and extensive limitations, further vocational placement assistance would appear to be futile at this time. Plaintiff has therefore proven that, barring change of condition, she has been rendered totally disabled.
12. Plaintiff has moved that attorneys fees be assessed against defendants on the basis that the claim was defended without reasonable grounds. Although there were depositions taken at defendants request that provided no substantial information outside of the stipulated medical reports, the sanction for such is to assess the cost of the deposition against that party, and the defendants have already been required to pay those costs. Since there was some evidence that plaintiff was capable of working, a finding cannot be made that defendants defended the case without reasonable grounds.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of the compensable occupational disease giving rise to this claim, plaintiff has been rendered totally disabled and is entitled to compensation at the rate of $245.11 per week for the remainder of her life, barring a change of condition. G.S. 97-29;Russell v. Lowes Products Distribution, 108 N.C. App. 762 (1993).
2. Subject to the limitations of G.S. 97-25.1, plaintiff is entitled to have defendants pay all reasonably necessary medical expenses, which tend to effect a cure, provide relief or lessen the period of disability arising from this injury by accident. G.S. 97-2(19); G.S. 97-25.
3. In that there were some grounds upon which defendants could have defended the claim, plaintiff is not entitled to an assessment of attorneys fees. G.S. 97-88.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay compensation to plaintiff for total disability at the rate of $245.11 per week for the remainder of her life, barring a change of condition. This award is subject to the attorneys fee hereinafter approved.
2. Subject to the limitations of G.S. 97-25.1, defendants shall pay all reasonably necessary medical expenses, which tend to effect a cure, provide relief or lessen the period of disability incurred by plaintiff as a result of her injury.
3. An attorneys fee in the amount of twenty-five percent of the compensation awarded is approved for plaintiffs counsel who shall receive every fourth check.
4. Defendants shall pay the costs.
This the ___ day of August 2000.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
DCS/nwg